IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Raymond P. Moore**

Civil Action No.  12-cv-03218-RM-MJW

WILLIAM BAZAREWSKI, and
HEATHER BAZAREWSKI,

    Plaintiffs,

v.

THE VAIL CORPORATION d/b/a VAIL RESORTS MANAGEMENT COMPANY,

    Defendant.

**ORDER ON MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

THIS MATTER is before the Court on Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6), (the "Motion to Dismiss") (ECF No. 18).  As discussed herein, the Motion to Dismiss is GRANTED.

**I.      BACKGROUND**

    **A.  Jurisdiction and Legal Standard**

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

In considering a motion under Rule 12(b)(6), a court must determine whether the allegations in the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). All well-pleaded allegations of the Complaint must be accepted as true. *McDonald v.*

*Kinder-Morgan, Inc.*, 287 F.3d 992 (10th Cir. 2002). Mere conclusory statements or legal conclusions masquerading as factual contentions will not suffice to defeat a motion to dismiss. *Ruiz v. McDonnell*, 299 F.3d 1172, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."). A court must review the complaint to determine whether it "contains enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

### B. Facts and Procedural History

William Bazarewski and his wife Heather Bazarewski are citizens of the state of Florida.[1] They brought their family to Colorado, and on the afternoon of January 2, 2010, they went to the Beaver Creek Ski Area, operated by Defendant, to go snow tubing. They arrived around 4:00 p.m. and bought $27 tickets, intending to go snow tubing for one hour.

The snow tubing run was icy and slick. Participants each sat in a large rubber tube and slid down the mountain in separate slides or chutes formed from the snow. A covered conveyer belt was used as a lift to take people and their tubes to the top of the tubing area to await their

---

[1] All facts, unless otherwise noted, are taken from the First Amended Complaint. (ECF No. 21.)

turn to go down again. At the bottom of the hill, black rubber mats about 3 feet by 5 feet wide were placed into the snow, intended to slow down the tubes and act as stoppers. Also at the bottom of the hill, there was an attendant posted with a walkie-talkie who signaled whether tubers had cleared the chute before the next person came down.

The Bazarewskis were given tubes at the top of the hill, and were not provided helmets or instructions. Each member of the Bazarewski family was sent down the hill at different times, and were told to "hang on and go." The attendants at the top of the hill would spin the tubes before letting them go, but Mr. Bazarewski told them after his first few runs not to spin his tube anymore.

On Mr. Bazarewski's fifth run down the hill, he used the same tube he had used on every previous run, which had two handles and a rope stretching between them. On that run, he was placed by attendants in the snow tube with the handles to his back. Mr. Bazarewski moved so the handles were in front of him, so he could hold them as he went down the hill. As he slid down the hill, his tube hit the rows of rubber stops while he was facing backwards, the tube flipped and Mr. Bazarewski flew out and landed on his head and neck, causing injuries to Mr. Bazarewski. Mrs. Bazarewski's claims are for consequent loss of consortium.

The Bazarewskis filed the original Complaint on December 10, 2012 against Defendants Beaver Creek Ski Area, Inc., Vail Holdings, Inc., Vail Resorts, Inc., and the Vail Corporation d/b/a Vail Resorts Management Company. (ECF No. 1.) Defendants filed the instant Motion to Dismiss on March 15, 2013. (ECF No. 18.) Plaintiffs filed the First Amended Complaint (the "Amended Complaint") on April 9, 2013, and pursuant to the Amended Complaint, all Defendants except for the Vail Corporation d/b/a Vail Resorts Management Company ("Vail" or

"Defendant") were terminated. (ECF No. 21.) The Amended Complaint added negligence as a new claim, alleging for the first time that Vail was negligent in placing the rubber mats at the bottom of the hill. (*Id.*) The parties filed a stipulation stating that Vail's Motion to Dismiss could be considered a Motion to Dismiss the Amended Complaint, and clarifying that Defendant's Reply would specifically address the Amended Complaint. (ECF No. 34.)

## II. DISCUSSION

The parties agree that the Colorado Ski Safety Act ("the Act") applies in this case and that under the Act, Mr. Bazarewski is a "skier," Beaver Creek is a "ski area," and The Vail Corporation is a "ski area operator." (ECF NO. 22 at 2.) The Act provides that, "[N]o skier may make any claim against or recover from any ski area operator for injury resulting from any of the inherent dangers and risks of skiing." Colo. Rev. Stat. Ann. § 33-44-112. The Act strives "to further define the legal responsibilities of ski area operators and their agents and employees; to define the responsibilities existing between the skier and the ski area operator and between skiers." *Kumar v. Copper Mountain, Inc.*, 431 Fed. Appx. 736, 737 (10th Cir. 2011). *Kumar* held that the Act "expressly bars '*any claim*' based on an injury caused by [an inherent risk]." 431 Fed. Appx. at 738 (emphasis in original) (citation omitted).

The Act defines the phrase "inherent dangers and risks of skiing" to mean:

> "Inherent dangers and risks of skiing" means those dangers or conditions that are part of the sport of skiing,[2] including changing weather conditions; snow conditions as they exist or may change, such as ice, hard pack, powder, packed powder, wind pack, corn, crust, slush, cut-up snow, and machine-made snow; surface or subsurface conditions such as bare spots, forest growth, rocks, stumps, streambeds, cliffs, extreme terrain, and trees, or other natural objects, and collisions with such natural objects; impact

---

[2] The Act defines a "skier," and thus skiing, as "any person using a ski area for the purpose of skiing, which includes, without limitation, sliding downhill…on snow or ice on…a tube…" Colo. Rev. Stat. Ann. § 33-44-103(8).

> with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components; variations in steepness or terrain, whether natural or as a result of slope design, snowmaking or grooming operations, including but not limited to roads, freestyle terrain, jumps, and catwalks or other terrain modifications; collisions with other skiers; and the failure of skiers to ski within their own abilities. The term "inherent dangers and risks of skiing" does not include the negligence of a ski area operator as set forth in Section 33-44-104 (2).[3]

Colo. Rev. Stat. Ann. § 33-44-103 (3.5). The Colorado Supreme court has held that inherent risks of skiing include "collisions with natural and man-made objects." *Bayer v. Crested Butte Mountain Resort, Inc.*, 960 P.2d 70, 74 (Colo. 1998).

Ski operators "may be liable under one of two theories. First, a skier may recover if his injury did not result from an inherent danger or risk of skiing. Such a claim would fall outside the scope of the SSA and would be governed by common-law negligence principles. Second, a ski area may be liable because it violated a provision of the SSA and that violation resulted in injury." *Kumar*, 431 Fed.Appx. at 738 (citations omitted).

The primary dispute between the parties is whether the Act provides immunity to Vail for its operation of the ski area or whether Plaintiffs are correct in their contention that the Act affords no protection to Defendant in this case as "Mr. Bazarewski's injury was caused by circumstances that are not an 'inherent danger and risk of skiing.'" (*Id.*) A secondary dispute is whether Plaintiffs' allegation of negligence meaningfully alters the analysis.

Defendant contends that the rubber mats alleged to have caused injury are part of the inherent dangers and risks of skiing (tubing). Plaintiffs argue that the placement of the rubber

---

[3] Section 33-44-104 (2) provides: "[a] violation by a ski area operator of any requirement of this article or any rule or regulation promulgated by the passenger tramway safety board pursuant to section 25-5-704 (1) (a), C.R.S., shall, to the extent such violation causes injury to any person or damage to property, constitute negligence on the part of such operator."

mats on the snow tubing hill does not meet the Act's definition of an inherent risk as "rubber mats or stops are not mentioned in the statute, and logically not included in it." (ECF No. 22 at 6.)

As noted above, the Act protects the ski area operator from claims of liability caused by a skier's collision with various objects—even man-made objects. Plaintiffs contend, however, that the various conditions and objects that are inherent risks of skiing are ones where "skiers have the ability to control their movement and responsibility to avoid such hazards." (ECF No. 22 at 7.) Unlike the list of man-made inherent risks cited in the statute, which according to Plaintiffs all have "a purpose and a reason to be there" and which skiers are obligated to avoid "colliding or impacting," "the rubber mats used at Beaver Creek Ski Area were placed at the foot of the snow tubing hill with the intention of a snow tuber contacting them." (ECF No. 22 at 8.) In other words, according to Plaintiffs, the statute lists a variety of man-made hazards that skiers have the responsibility to avoid, and since skiers are meant to collide with the rubber mats, they are clearly a different type of hazard not contemplated by the Act.

The Court rejects this argument. There is no reason to assume, as Plaintiffs would have me do, that the statute was intended to cover only those man-made hazards which should be *avoided* by skiers. In fact, *Cuny v. Vail Associates* suggests quite a different conclusion. In that case, the Colorado Court of Appeals held that a plaintiff who "alleged that he suffered injuries when, as a result of defendant's negligence, the bobsled he was riding crashed into a bump at the end of the track causing extraordinarily hard impacts" had no actionable claims under the Act, because what he suffered was "an inherent risk of bobsledding." 902 P.2d 881, 882 (Colo. App. 1995). Plaintiffs argue *Cuny* is distinguishable because the rubber mats, unlike the bobsledding

6

bump, are a failed safety feature, rather than an inherent part of the sport which helps make it fun. This argument fails, in part because it acknowledges what Plaintiffs would have me overlook—that there was a purpose for the rubber mats on the course, and that they are by definition an inherent part of the experience. There is no principled way to distinguish them from the other items which have been deemed inherent risks of the sport, such as the bumps on the bobsled track.

In light of the statutory language of the Act, the Court concludes that the Act applies and bars Plaintiffs' claims. The Act's list of "inherent dangers," which is non-exclusive, includes such things as "freestyle terrain, jumps, and catwalks or other terrain modifications." Colo. Rev. Stat. Ann. § 33-44-103 (3.5). It also includes "impact with lift towers, signs, posts, fences or enclosures, hydrants, water pipes, or other man-made structures and their components." *Id*. Given this language, the Court finds that the statutory language compels the conclusion that Plaintiffs' claims based on rubber mats placed on the snow tubing course must fail.

Moreover, the focus on "collisions" as used in the statute needlessly and improperly narrows the appropriate inquiry. The proper scope of the inquiry should be on what constitutes "part of the sport" of tubing, as that inquiry defines what may be expected by way of inherent dangers and risks—whether collisions or otherwise. Here, what is complained of is the make-up of the course itself. More important than the issue of whether contact with mats is to be avoided or expected is whether the injury occurred due to risks and dangers which are part of the sport of tubing. In the Court's view, an injury which occurred on the course and due to the very nature of the course—whether caused by contact with shaped or packed snow (which may be described as natural) or by contact with rubber mats at the end of the course (which may be described as man-

made)—is one resulting from "inherent dangers and risks" of tubing. Course conditions, especially open and obvious ones, are part of the tubing experience. And Plaintiffs' circumstance is no different from injuries caused by other course conditions such as "slope design," "terrain modifications" or other course conditions expressly referenced in the Act.[4]

Plaintiffs' Amended Complaint also included a claim for negligence based on Vail's "failure to design the run out at the bottom of the snow tubing hill to use the friction of the snow and gravity to decelerate the snow tube in a safe manner" and also that "Vail was negligent in allowing the tubing strap to fly freely outside the tube, making the tube more vulnerable to tipping over when coming in contact with the mats at the bottom of the snow tubing run." (Amended Complaint ¶¶ 57, 61.) The Act specifically permits actions based on a ski area operator's negligence, but restricts actionable negligence to conduct which constitutes a violation of the Act. Colo. Rev. Stat. Ann. § 33-44-104. Plaintiffs' negligence claim hardly escapes the immunity conferred by statute. They claim that "Mr. Bazarewski's injury was caused by the ski area's negligence in placing rubber mats at the bottom of the snow tubing hill." But they do not undertake any allegation or analysis of how Defendant's actions violated the Act. (ECF No. 22 at 5.) Plaintiffs do not argue, nor could they, that the mats are in specific violation of the Act, and therefore they cannot make out a valid claim for negligence permitted by the Act.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 18) is GRANTED;

---

[4] Plaintiffs attempt to resist this conclusion by arguing that the statute surely would not protect a ski area operator's decision to construct a brick wall at the end of a tubing course to stop those engaged in tubing. While it is doubtful that the Court would construe a course design which inherently and inevitably produced injury as "part of the sport," that matter need not be decided in this case. Defendant's tubing course contains nothing so extreme. Before this Court is instead a course that others and Mr. Bazarewski himself safely traversed multiple times.

2. The First Amended Complaint (ECF No. 21) is DISMISSED;

3. The Motion for Summary Judgment filed by Defendant (ECF No. 51) is DENIED AS MOOT;

4. The Clerk shall enter judgment in favor of Defendant on all claims.

DATED this 4th day of March, 2014.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge